IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

       Plaintiff,                 No. CIV 2:10-cv-0778-JAM-JFM

   vs.

APPROX. $9,693.00 IN U.S. CURRENCY,
et al.,

       Defendants.           <u>FINDINGS & RECOMMENDATIONS</u>

_____/

      Before the court is plaintiff United States of America's July 24, 2010 motion for default judgment, requesting (1) entry of default judgment against the interests of Erin Patrick O'Neil ("O'Neil") and Amy O'Neil ("Amy") in approximately $9,693.00 in U.S. currency ("the defendant currency") and (2) entry of final judgment of forfeiture vesting plaintiff all right, title and interest in the defendant currency.

FACTUAL BACKGROUND

      Since January 1, 2009, the Drug Enforcement Administration's Diversion Group ("DEA") and the West El Dorado Narcotics Enforcement Taskforce ("WENET") have executed eight undercover purchases of anabolic steroids with Jason Glavin ("Glavin"). (Compl. at 2.) During the course of the investigation, O'Neil and Amy have been identified as the source of

1

1  supply for Glavin.  Both O'Neil and Amy have also been identified as the manufacturers and co-

2  conspirators in the manufacturing and distributing of anabolic steroids for each of the undercover

3  purchases executed.  (Id.)

4         As of September 4, 2009, the DEA and WENET have purchased ninety-five vials

5  of Nandrolone Decanoate (Schedule III) and five hundred capsules of various anabolic steroids,

6  and seized an additional four hundred capsules of anabolic steroids, all manufactured by O'Neil

7  in a manufacturing site in Elverta, California.  (Compl. at 2.)  As of September 15, 2009, the

8  DEA and WENET have spent $15,050.00 in authorized funds.  (Id.)

9         On October 14, 2009, Glavin was arrested after he delivered 100 vials of anabolic

10  steroids to an undercover officer.  (Compl. at 2.)  Following his arrest, law enforcement agents

11  executed search warrants at three locations, including the residence of O'Neil and Amy.  (Id. at

12  2-3.)  During the search of O'Neil and Amy's residence, a DEA agent located a white envelope

13  in the top drawer of a dresser in the master bedroom which contained an undetermined amount

14  of U.S. currency.  (Id. at 3.)  A wallet with an undetermined amount of U.S. currency was also

15  located in the top drawer of this dresser.  (Id.)  It was later determined that the amount located

16  contained thirty-five one hundred dollar bills of DEA Official Authorized Funds and

17  approximately $9,693.00 in U.S. currency (the defendant currency).  (Id.)  Law enforcement

18  agents also found, inter alia, approximately 98 vials of anabolic steroids, 100 anabolic steroid

19  capsules, syringes, and one box of Omifin Clomifino tablets.  (Id. at 3-4.)

20         On October 14, 2009, O'Neil and Amy were arrested.  (Compl. at 4.)  On or about

21  March 24, 2010, the El Dorado County District Attorney charged O'Neil and Glavin for

22  violations of Penal Code § 182(a)(1) (Conspiracy to Commit a Crime) (1 count), Health &

23  Safety Code § 11378 (Possession for Sale of a Controlled Substance) (1 count), and Health &

24  Safety Code § 11379(A) (Sale of a Controlled Substance) (6 counts).

25  /////

26  /////

2

PROCEDURAL BACKGROUND

On April 1, 2010, plaintiff filed the present complaint for forfeiture in rem against the defendant currency. On April 6, 2010, a warrant for arrest of articles in rem was issued. On April 9, 2010, the warrant was executed.

On April 8, 2010, plaintiff sent separate packets with copies of the complaint, application and order for publication, order regarding clerk's issuance of warrant for arrest, warrant for arrest, order requiring joint status report, and court notices to O'Neil and Amy by first class mail and by certified mail. (Teglia Decl. at ¶ 3, Ex. A.) The packets were both signed by "Erin P. O'Neil" and received on April 23, 2010. (Id.)

On April 29, 2010 and May 4, 2010, personal service was attempted by the U.S. Marshals Service on O'Neil and Amy. (Doc. No. 7.) On May 6, 2010, service was accomplished by leaving the documents at O'Neil and Amy's last known address. (Id.)

On April 27, 2010, the undersigned authorized publication of the forfeiture action via the internet forfeiture website (www.forfeiture.gov) for at least thirty days. According to plaintiff's Declaration of Publication (Doc. No. 8), a Notice of Civil Forfeiture was published on the official government internet site (www.forfeiture.gov) for thirty days beginning on April 29, 2010. To date, no claim or answer has been filed on behalf of O'Neil or Amy.

On June 9, 2010, plaintiff moved for default judgment. On June 10, 2010, entry of default was entered as to O'Neil and Amy.

LEGAL STANDARD

A court has the discretion to enter a default judgment against one who is not an infant, incompetent, or member of the armed services where the claim is for an amount that is not certain on the face of the claim and where (1) the defendant has been served with the claim; (2) the defendant's default has been entered for failure to appear; (3) if the defendant has appeared in the action, the defendant has been served with written notice of the application for judgment at least three days before the hearing on the application; and, (4) the court has

1   undertaken any necessary and proper investigation or hearing in order to enter judgment or carry

2   it into effect.  Fed. R. Civ. P. 55(b); <u>Alan Neuman Productions, Inc. v. Albright</u>, 862 F.2d 1388,

3   1392 (9th Cir. 1988).  Factors that may be considered by courts in exercising discretion as to the

4   entry of a default judgment and as to setting aside a default include the nature and extent of the

5   delay, <u>Draper v. Coombs</u>, 792 F.2d 915, 924-25 (9th Cir. 1986); the possibility of prejudice to

6   the plaintiff, <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986); the merits of plaintiff's

7   substantive claim, <u>id.</u>; the sufficiency of the allegations in the complaint to support judgment,

8   <u>Alan Neuman Productions, Inc.</u>, 862 F.2d at 1392; the amount in controversy, <u>Eitel v. McCool</u>,

9   782 F.2d at 1471-72; the possibility of a dispute concerning material facts, <u>id.</u>; whether the

10   default was due to excusable neglect, <u>id.</u>; and, the strong policy underlying the Federal Rules of

11   Civil Procedure that favors decisions on the merits, <u>id.</u>

12          With respect to default judgments in proceedings that are in rem actions for

13   forfeiture, both the general Federal Rules of Civil Procedure and the Supplemental Rules for

14   Certain Admiralty and Maritime Claims ("Supp. R.") apply, but the latter rules prevail if there is

15   an inconsistency.  Supp. R. A(1).  Supp. R. G(1) provides that the rule governs a forfeiture action

16   in rem arising from a federal statute; to the extent that Rule G does not address an issue, Supp.

17   Rules C and E also apply.  Supplemental Rule G, which took effect on December 1, 2006,

18   incorporates a common-sense approach to notice grounded in defined and recognized principles

19   of due process of law.  Supp. Rule G, Adv. Comm. Note on 2006 Adoption.  The Advisory

20   Committee Note indicates that the rule was added to bring together the central procedures

21   governing civil forfeiture actions; it also states that the rule generally applies to actions governed

22   by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA) as well as those excluded from it;

23   thus, the intended scope of application is very broad.  The rule permits flexibility as to the time

24   of service of any warrant and supplemental process.  <u>Id.</u>  The provisions for notice incorporate

25   the traditional means of publication and adopt the general principle that notice should be

26   effectuated by means reasonably calculated to reach potential claimants at a cost reasonable in

the circumstances, and actual notice precludes a challenge to the government's failure to comply

with the specific requirements of the rule set forth in Rule G(4)(b).  Id.

ANALYSIS

1.      Judgment Sought

The court concludes that the notice given of the judgment sought satisfied Fed. R.

Civ. P. 55(d) and 54(c), which require that a judgment by default shall not be different in kind

from the relief sought, or exceed in amount that prayed for, in the demand for judgment.

Plaintiff expressly sought in the complaint the types of relief sought by the instant application for

default judgment, including a judgment of forfeiture of the defendant currency to the plaintiff

United States.

2.      Default and Entry of Default

The declarations and the court's docket demonstrate that no person or entity made

a claim or answered the complaint within the requisite thirty-day period for filing a claim of 18

U.S.C. § 983(a)(4)(A) and Supp. R. G(5), and/or within the twenty-day period set forth in Supp.

R. G(5) for filing an answer thereafter.  Therefore, the Clerk appropriately entered the default of

potential claimants O'Neil and Amy on June 10, 2010.

3.      Notice

The Declaration of Publication by plaintiff filed on June 7, 2010 establishes that a

notice with the contents required by Supp. R. G(4)(a) was published on the official government

internet site for thirty consecutive days as required by Supp. R. G(4)(a)(iv)(C).

With respect to O'Neil and Amy, who both resided at 4306 Castleglen Way, Fair

Oaks, California, the declaration of Tammy Teglia and the Marshal's return of service establish

that O'Neil and Amy were personally served with the pertinent documents on May 6, 2010.

Thus, the notice to O'Neil and Amy complied with the requirements of Supp. R. G(4)(b).

The undersigned concludes that plaintiff has demonstrated that it has given notice

by publication and the notice required to be given to potential claimants by Rule G(4).

5

4.      Legal Sufficiency of the Complaint

        a.      Legal Standard

                A default judgment  generally bars the defaulting party from disputing the facts

alleged in the complaint, but the defaulting party may argue that the facts as alleged do not state

a claim.  Alan Neuman Productions, Inc., 862 F.2d at 1392.  Thus, well pleaded factual

allegations, except as to damages, are taken as true; however, necessary facts not contained in

the pleadings, and claims which are legally insufficient, are not established by default.  Cripps v.

Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992); TeleVideo Systems, Inc. v.

Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

                Under the CAFRA, which applies to this case, the government must prove by a

preponderance of evidence that the property is subject to forfeiture.  18 U.S.C. § 983(c)(1).

Further, if the government's theory of forfeiture is that the property was used to commit or

facilitate the commission of a criminal offense, or was involved in the commission of a criminal

offense, the government shall establish that there was a substantial connection between the

property and the offense.  § 983(c)(3).

                Supp. Rule G(2) requires that the complaint in a forfeiture action in rem arising

from a federal statute be verified; state the grounds for subject-matter jurisdiction, in rem

jurisdiction over the defendant property, and venue; describe the property with reasonable

particularity; identify the statute under which the forfeiture action is brought; and state

sufficiently detailed facts to support a reasonable belief that the government will be able to meet

its burden of proof at trial.

        b.      The Complaint

                The complaint filed in this action was verified.  (Compl. at 6.)

                The bases for jurisdiction are identified as 28 U.S.C. §§ 1345 and 1355

(jurisdiction of civil proceedings commenced by the United States or an agency or officer

thereof, and of actions to recover or enforce penalties or forfeitures under acts of Congress,

respectively) and 21 U.S.C. § 881(a)(6) (subjecting to forfeiture, among other things, all things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, and all proceeds traceable to such an exchange).  (Compl. at 1, 4.)

The bases of venue are identified as 28 U.S.C. §§ 1355(b) (placing venue for a civil forfeiture action where the acts giving rise to the forfeiture occurred) and 1395 (placing venue for a civil forfeiture proceeding where the property is found).  (Compl. at 1.)

The property is described with reasonable particularity.

It is stated that plaintiff proceeds pursuant to 21 U.S.C. § 881(a)(6), and that the defendant property, seized in October 2009 in Fair Oaks, California, constitutes money or things of value furnished or intended to be furnished in exchange for a controlled substance of listed chemical, proceeds traceable to such an exchange, and/or all moneys used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841 *et seq.*  (Compl. at 4.)

In the complaint there are alleged sufficiently detailed facts to support a reasonable belief that the government would be able to meet its burden of proof at trial.  The complaint detailed an ongoing investigation into the purchase of anabolic steroids from Glavin. During the course of the investigation, O'Neil and Amy were identified as the source of Glavin's supply and the manufacturers and co-conspirators in the manufacturing and distribution of anabolic steroids for each of the undercover purchases executed.  Following a final purchase on September 4, 2009, Glavin was arrested and a search warrant was executed at O'Neil and Amy's residence.  There, agents located the defendant currency, in addition to, inter alia, ninety-eight vials of anabolic steroids, 100 anabolic steroid capsules, and syringes.

These facts support a reasonable inference that the defendant currency was subject to forfeiture as proceeds/property traceable to proceeds or as property intended to be used to facilitate other violations.  The totality of the circumstances reflects that a substantial connection between the property and the related drug offenses was demonstrated.

/////

5.       Status of Potential Claimants and Discretionary Factors

Here, no one has claimed an interest in the defendant currency or otherwise responded to the complaint despite adequate notice.  It does not appear that there is any risk of mistake or excusable neglect on the part of anyone with a potential interest in the property or of a dispute as to a material fact essential to the government's case.  No just cause for delay appears. There does not appear to be any reason why the general policy in favor of a decision on the merits would warrant refusing to enter the requested default judgment.

Based thereon, the court finds that plaintiff has shown its entitlement to a default judgment of forfeiture.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that

1.  Plaintiff's July 24, 2010 motion for default judgment be granted; and

2.  Plaintiff is entitled to, and the Clerk be directed to enter, a judgment that:

A.  The interest/s of O'Neil and Amy in the defendant property are condemned and forfeited to the United States of America; and

B.  The right, title, and interest of all potential claimants in the defendant property, including but not limited to O'Neil and Amy, are forfeited to the United States of America pursuant to 21 U.S.C. § 881(a)(6), and are vested in the United States; and,

C.  All persons claiming any right, title, or interest in or to the defendant property have defaulted and no longer have any right, title, or interest in the defendant property whatsoever; and,

3. The Clerk of Court enter final judgment of forfeiture for plaintiff.

These findings and recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 1, 2010.

UNITED STATES MAGISTRATE JUDGE

/014;usa0778.def